# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**ANGELINA MONICA SILVA,**

     **Plaintiff,**

**v.**                                           **No. 15-cv-0603 SMV**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security Administration,**

     **Defendant.**

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supportive Memorandum [Doc. 15] ("Motion"), filed on February 16, 2016. The Commissioner responded on May 12, 2016. [Doc. 19]. Plaintiff replied on June 7, 2016. [Doc. 22]. The parties have consented to the undersigned's entering final judgment in this case. [Doc. 9]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") failed to apply the correct legal standards in weighing the medical opinions of Dr. Walker and Dr. Owen. Therefore, the Motion will be granted, and the case will be remanded for further proceedings consistent with this opinion. *See* 42 U.S.C. § 405(g) (sentence four).

**Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).

## Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) she is not engaged in "substantial gainful activity"; *and* (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) her impairment(s) either meet or equal one of the "Listings"[2] of presumptively disabling impairments; *or* (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If she cannot show that her impairment meets or equals a Listing, but she proves that she is unable to perform her "past relevant work," the burden of proof then shifts to the Commissioner, at

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

step five, to show that the claimant is able to perform other work in the national economy, considering her residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### Procedural Background

Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income on June 17, 2011.  Tr. 11.  She alleged a disability-onset date of June 1, 2010. *Id*.  Her claims were denied initially and on reconsideration.  *Id*.  Plaintiff requested a hearing before an ALJ.  *Id*.  On September 12, 2013, ALJ Ann Farris presided over a hearing in Albuquerque, New Mexico.  Tr. 11, 28–56.  Plaintiff appeared in person with her attorney. Tr. 28–56.  The ALJ heard testimony from Plaintiff and an impartial vocational expert ("VE"), Thomas Greiner.  *Id.*

The ALJ issued her unfavorable decision on December 20, 2013.  Tr. 23.  Initially, the ALJ found that Plaintiff met the insured status for disability insurance through June 30, 2011. Tr. 13.  At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  *Id.*  Accordingly, the ALJ proceeded to step two, where she found that Plaintiff suffered from the following severe impairments: "carpal tunnel syndrome, borderline intellectual functioning, post-traumatic stress disorder (PTSD), opioid dependence, and cannabis dependence[.]"  *Id.*  At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing.  Tr. 14–16.

Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC.  Tr. 16–21.  The ALJ found that "[Plaintiff] has the [RFC] to

perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b) with some restrictions.  [Plaintiff] is frequently, but not constantly, able to handle and finger.  [She] is restricted to simple, repetitive tasks, with no public interaction."  Tr. 16.

At step four, the ALJ found that Plaintiff was unable to return to any of her past relevant work.  Tr. 21.  Having found that Plaintiff could not return to her past relevant work, the ALJ proceeded to the fifth step.  There, based on Plaintiff's RFC, age, education, work experience, and on the testimony of the VE, she found that Plaintiff could perform other work that exists in significant numbers in the national economy.  Tr. 22–23.  Ultimately, the ALJ found that Plaintiff had not been under a disability, as defined by the Social Security Act, during the relevant time period, and she denied the claims.  *Id.*  The Appeals Council denied Plaintiff's request for review on May 12, 2015.  Tr. 1−5.  Plaintiff timely filed the instant action on July 10, 2015.  [Doc. 1].

<u>**Analysis**</u>

The Court finds that the ALJ in this case impermissibly rejected Dr. Walker's and Dr. Owen's opinion that Plaintiff was moderately limited in her ability to adapt to changes in a routine work setting.  The Court rejects the Commissioner's argument that the ALJ was not required to account for the limitation merely because it was found in Section I of Dr. Walker's report (instead of Section III).  As thoroughly explained below, the relevant authorities do not support the argument.  In fact, the Program Operations Manual System ("POMS"), the regulations, and case law all indicate that the ALJ was required to consider Dr. Walker's report in its entirety.  The Court finds that the ALJ's RFC assessment does not account for the

limitation, and because the ALJ failed to explain why she omitted it, the case must be remanded for proper evaluation of the medical opinions of Dr. Walker and Dr. Owen.

I.   The ALJ was required to discuss the weight she assigned to the opinions of Dr. Walker and Dr. Owen.

Although ALJs need not discuss every piece of evidence, they are required to discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). Specifically, when assessing a plaintiff's RFC, an ALJ must explain what weight is assigned to each opinion and why. SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996). "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity . . . because the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (same). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (internal brackets omitted) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). Ultimately, ALJs are required to weigh medical source opinions and to provide "appropriate *explanations* for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at *5 (emphasis added); *see Keyes-Zachary,* 695 F.3d at 1161 (same) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)).

In 2007, the Tenth Circuit Court of Appeals published two cases that control here. First, in *Haga*, the court held that an ALJ erred in failing to explain why he adopted some of a consultative examiner's ("CE") restrictions but rejected others. 482 F.3d at 1208. "[T]he ALJ

did not state that any evidence conflicted with [the CE's] opinion or mental RFC assessment.  So it is simply unexplained why the ALJ adopted some of [the CE's] restrictions but not others." *Id.* The court, therefore, remanded "so that the ALJ [could] explain the evidentiary support for his RFC determination." *Id.*  Later in 2007, the Tenth Circuit expressly applied *Haga* and its reasoning to the opinions of nonexamining physicians in *Frantz v. Astrue*, 509 F.3d 1299, 1302−03 (10th Cir. 2007).

In this case, the parties do not dispute that the ALJ was required to discuss the weight she assigned to Dr. Walker's opinion.  Rather, they dispute whether the ALJ was required to discuss the entirety of Dr. Walker's opinion or just the portion that is commonly referred to as "Section III."

a.   The ALJ's duty to discuss the weight she assigned to Dr. Walker's opinion is not satisfied by addressing only the findings in Section III and not those in Section I.

Plaintiff argues that remand is warranted because the ALJ failed to apply the correct legal standard in evaluating the opinion of nonexamining physician, Dr. Walker.  [Doc. 15] at 15−19. Dr. Walker assessed moderate limitations in numerous areas for Plaintiff.  Tr. 70–71.  Plaintiff argues that the ALJ did not incorporate these limitations into her RFC assessment (or her hypothetical question to the VE) even though she said she gave Dr. Walker's opinion "great weight."  [Doc. 15] at 15–16.  Plaintiff argues that the ALJ's failure to incorporate all of Dr. Walker's limitations, coupled with her failure to explain why she did not do so, constitutes an impermissible picking and choosing from among Dr. Walker's assessed limitations.  *Id.* at 18−19 (citing *Haga*, 482 F.3d at 1208; *Frantz*, 509 F.3d at 1302–03).

The Commissioner fails to respond to Plaintiff's arguments or authorities.  Instead, she reframes the issue by arguing that the ALJ was entitled to "account for Dr. Walker's [Mental

Residual Functional Capacity Assessment ("MRFCA")] report by relying on his specific opinion, [expressed] at the conclusion of his report, that Plaintiff could handle simple instructions and interact appropriately with coworkers and supervisors in a routine setting." [Doc. 19] at 6. She argues that Plaintiff should not ask the Court to read Dr. Walker's MRFCA report "in a manner not intended by the agency." *Id.* Although she does not explain herself further, she does cite half a dozen cases that she believes support her position. *Id.* at 6–7. The Court has heard the argument before. Essentially, based on the instructions printed on the doctor's MRFCA form, and based on certain sections of the POMS, the Commissioner argues that the ALJ need not make findings on certain portions of a doctor's MRFCA form because those portions were not intended to reflect the doctor's opinion as to Plaintiff's ultimate RFC. *See id.*

     i.  The POMS' distinction between Section I and Section III is aimed at the doctor who completes the MRFCA form; it is not material to how the ALJ weighs the nonexamining opinion.

An explanation of the relevant administrative process is necessary here. At the initial and reconsideration stages,[3] the ultimate determination of disability can be made by a "medical consultant." This is a doctor who is an expert in evaluating claims for disability benefits. POMS § DI 24501.001(B)(2). The doctor weighs the evidence in the file in order to make findings as to the claimant's RFC (and, ultimately, as to whether she is disabled and entitled to benefits). POMS §§ DI 24501.001(B)(2); 24501.005(B)(1), (C). In other words, at the initial and reconsideration stages, the doctor himself is the adjudicator. *Id.*

---

[3] When a claimant applies for disability benefits, the Commissioner's first pass at the application occurs at the "initial" stage. If the application is denied, the claimant may request "reconsideration." If the claim is again denied, she may request a hearing before an ALJ. If the claim is denied by the ALJ, she may request that the Appeals Council review the ALJ's decision. If the Appeals Council denies review, she may file a lawsuit in federal court.

To record his RFC assessment, the doctor utilizes form SSA-4734-F4-SUP, the MRFCA form.  POMS DI §§ 24510.005(B)(2); 24510.061(A).  The POMS explains that in order "[t]o assure a comprehensive assessment of mental RFC, the [MRFCA form] requires the [doctor] to first record preliminary conclusions about the effect of the impairment(s) on each of four general areas of mental function [in Section I,] then to prepare a narrative statement of mental RFC [in Section III]."  POMS § DI 24510.061(A) (emphases omitted).  For example, a claimant is "'Moderately Limited' when the evidence supports the conclusion that the individual's capacity to perform the activity is impaired."  POMS § DI 24510.063(B) (emphases omitted).  When the doctor finds a claimant moderately limited in a certain area, "[t]he degree and extent of the capacity or limitation must be described in a narrative format in Section III."  POMS § DI 24510.063(B)(2) (emphases omitted).  "Section III is for recording the formal narrative mental RFC assessment and provides for the [doctor] to prepare a narrative statement for each of the subsections (A through D) in [S]ection I."  POMS § DI 24510.065(A), *see* (B).  In other words, the doctor must incorporate all of his Section I findings into his Section III narrative RFC assessment.

At the stages that the doctor makes these RFC findings, i.e., at the initial and reconsideration stages, his RFC findings are *not* evidence.  POMS § DI 24515.007(3)(a).  The MRFCA form, which contains his RFC findings, is not evidence; rather, it is a decision.  The POMS expressly clarifies that when the doctor is acting as an adjudicator (i.e., at the initial and reconsideration stages), his "findings are not opinion evidence, but are formal determinations based on weighing of all the evidence[.]"  *Id.*

Later in the administrative process, however, if the case comes before an ALJ, the nature of the MRFCA form changes.  At the ALJ stage, the doctor's MRFCA form is no longer the adjudication of the case; rather it becomes *evidence* that the ALJ must consider in making her own new, independent findings.  The ALJ considers the doctor's MRFCA form along with all of the other evidence in the file.  This MRFCA form has been completed by a doctor, acting as an adjudicator, at an earlier administrative stage.  Because that doctor never examined the claimant, ALJs (and courts) refer to him as the "nonexamining physician" and refer to his report as the "nonexamining opinion."  In other words, when the case percolates up to an ALJ, the findings on the MRFCA form change from an adjudication of the claim to a "nonexamining opinion" about the claim.

At the ALJ-stage (and thereafter) the *entire* MRFCA form—all of the findings on the MRFCA form—is considered the doctor's "opinion."   POMS DI § 24515.007(1)(b) ("All evidence from nonexamining sources is opinion evidence."); *see* POMS §§ DI 24515.002(B)(2) ("Medical opinions are statements from physicians and psychologists . . . that reflect judgments about the nature and severity of a claimant's impairment(s), including any of the following: a. Symptoms, b. Diagnosis and prognosis, c. What the claimant can still do despite impairment(s), and d. Physical or mental restriction."); 24510.010(A)(2) ("The medical source statement must always be carefully considered and addressed.").   The distinction between Section I and Section III, which was meaningful for the physician adjudicator, has little to no bearing on how the ALJ must weigh the MRFCA report.  POMS § DI 24515.007(3)(b) ("At the . . . [ALJ]. . . hearing . . . level . . . , the ALJ . . . will consider findings of fact made by DDS medical and psychological consultants . . . regarding the nature and severity of an individual's

impairment(s) as expert opinion evidence of nonexamining sources.").   Appreciating the
administrative context in which the MRFCA form is generated is helpful because it clarifies that
the POMS' distinction between Section I and Section III is aimed at the doctors who complete
the forms, not at the ALJs.

> ii.   The **POMS** required the ALJ to address all of Dr. Walker's findings in
> discussing the weight she assigned to Dr. Walker's opinion, not merely
> those contained in Section III.

Seeing that the distinction between Section I and Section III of the MRFCA form is not
material to how the ALJ evaluates a nonexamining opinion, the Court looks for instructions on
what is material to the evaluation.  A particularly relevant POMS section is titled, "*Evaluating
Nonexamining Source Medical Opinions*."  It states that "[a]ll evidence from nonexamining
sources is opinion evidence."  POMS § DI 24515.007(1)(b).   It does not say that only the
nonexamining source's opinion as to the ultimate RFC constitutes opinion evidence.  *See id.*
Another section of the POMS dictates how ALJs should view the MRFCA forms.  It is called,
"*Consideration of Administrative Findings of Fact by State Agency Medical and Psychological
Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge
and Appeals Council Levels of Administrative Review; Medical Equivalence (SSR 96-6p)*."
POMS § DI 24515.013.   In pertinent part, it reads:

> **A. Introduction**
>      Regulations 20 CFR 404.1527 and 416.927 set forth
> detailed rules for evaluating medical opinions about an individual's
> impairment(s) offered by medical sources and the medical opinions
> of State agency medical and psychological consultants and other
> nonexamining sources.  ("Medical sources" are defined in 20 CFR
> 404.1502 and 416.902 as "treating sources," "sources of record"
> (i.e., medical sources that have provided an individual with
> medical treatment or evaluation, but do not have or did not have an
> ongoing treatment relationship with the individual), and

"consultative examiners" for the Social Security Administration. See DI 22505.001B.3.) Paragraph (a) of these regulations provides that **"medical opinions" are statements from physicians** and psychologists or other acceptable medical sources **that reflect judgments about the nature and severity of an individual's impairment(s), including** symptoms, diagnosis and prognosis, **what the individual can still do despite his or her impairment(s), and the individual's physical or mental restrictions.** Paragraph (b) provides that, **in deciding whether an individual is disabled, the adjudicator will always consider the medical opinions in the case record** together with the rest of the relevant evidence. Paragraphs (c), (d), and (e) then provide general rules for evaluating the record, with particular attention to medical and other opinions from acceptable medical sources.

Paragraph (f) provides that **findings of fact made by State agency medical and psychological consultants** and other program physicians and psychologists **become opinions at the administrative law judge** and Appeals Council **levels** of administrative review and **requires administrative law judges** and the Appeals Council **to consider and evaluate these opinions when making a decision in a particular case**.

State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act. As members of the teams that make determinations of disability at the initial and reconsideration levels of the administrative review process (except in disability hearings), they consider the medical evidence in disability cases and make findings of fact on the medical issues, including, but not limited to, the existence and severity of an individual's impairment(s), the existence and severity of an individual's symptoms, whether the individual's impairment(s) meets or is equivalent in severity to the requirements for any impairment listed in 20 CFR part 404, subpart P, appendix 1 (the Listing of Impairments), and the individual's residual functional capacity (RFC).

**B. Policy – Interpretation**

Because State agency medical and psychological consultants and other program physicians and psychologists are experts in the Social <u>Security</u> disability programs, **the rules in 20 CFR 404.1527(f) and 416.927(f) require administrative law judges and the Appeals Council to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists. Administrative law judges and the Appeals**

> **Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.**

POMS § DI 24515.013 (emphases added).  The same POMS section goes on explicitly to require ALJs to "consider and evaluate" the RFC assessments of the nonexamining doctors, but it does not exclude from consideration any portion of the doctor's opinion.  POMS § DI 24515.013(B)(2).  It would not make sense for this phrase to be interpreted as a suggestion— much less a directive—that an ALJ ignore the other, non-RFC evidence.  Rather, taken in the context of the administrative process described above, it is clear that the RFC is explicitly mentioned because earlier in the process (at the initial and reconsideration stages) the doctor's RFC is not considered evidence.

After thoroughly reviewing the relevant sections of the POMS, the Court is firmly convinced that it does not permit ALJs to ignore the findings recorded in Section I of the MRFCA form.  The Court agrees with the Commissioner that Section I is intended as a worksheet to aid the doctor in assessing an RFC, and that Section III is intended as the doctor's RFC assessment.  However, that construction does nothing to explain why it would be permissible (or desirable) for an ALJ to ignore Section I.  It is a non sequitur.  The POMS is clear and unambiguous; ALJs must weigh all of the findings contained in the MRFCA form.

   iii. <u>The **regulations** required the ALJ to address all of Dr. Walker's findings in discussing the weight she assigned to Dr. Walker's opinion, not merely those contained in Section III.</u>

The regulations are clear on this subject, and they do not support the Commissioner's position that the ALJ may ignore the findings recorded in Section I.  Other than the doctor's

opinion as to the ultimate issue of disability (i.e., whether the plaintiff is disabled), the ALJ must

consider the *entire* opinion.

> Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists. State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. *Therefore, administrative law judges must consider **findings and other opinions** of State agency medical and psychological consultants* and other program physicians, psychologists, and other medical specialists ***as opinion evidence***, except for the ultimate determination about whether you are disabled (see § 404.1512(b)(8)).

20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) (emphases added).  The entirety of a medical

source opinion constitutes evidence that must be weighed by an ALJ:

> (b) *What we mean by "evidence."*  Evidence is anything you or anyone else submits to us or that we obtain that relates to your claim.
> (1) Evidence includes, but is not limited to:
> &#42; &#42; &#42; &#42;
> (viii) At the administrative law judge and Appeals Council levels, ***findings***, other than the ultimate determination about whether or not you are disabled, *made by State agency medical or psychological consultants* and other program physicians or psychologists, or other medical specialists, ***and opinions expressed*** *by medical experts or psychological experts that we consult based on their review of the evidence in your case record* (*see* §§ 404.1527(e)(2)-(3)).

20 C.F.R. §§ 404.1512(b)(1)(viii), 416.912(b)(1)(viii) (emphases added).  Other than for the

ultimate conclusion of disability, the regulations make no exception for any portion of the

doctor's MRFCA form.  *See id.*  The regulations do not permit an ALJ to discuss only the portion

of the doctor's opinion that the doctor intended to be an RFC assessment.  Nor do the regulations

permit an ALJ to ignore a portion of a doctor's opinion just because the doctor did not intend it to be an RFC assessment.  *See id.*  The Commissioner's position is not consistent with the regulations.

> iv.  The **case law** required the ALJ to address all of Dr. Walker's findings in discussing the weight she assigned to Dr. Walker's opinion, not merely those contained in Section III.

Considering the POMS, the regulations, and *Haga* and *Frantz* in particular, the Court cannot interpret the relevant case law as supporting the Commissioner's argument that the ALJ in this case was permitted to "rely" on Dr. Walker's Section III findings, without explaining why she did not also rely on his Section I findings.  The Commissioner cites to the recently published case *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016), to support her position that the ALJ did not need to discuss the Section I findings.  She argues that based on the "clear precedent" of *Smith*, [Doc. 19] at 7, an "ALJ may properly rely on a non-examining physician's opinion by adopting the doctor's opinions as to the claimant's specific residual functional capacity [i.e., Section III findings]," *id.* at 6.  She also cites an unpublished case from the Tenth Circuit, along with several out-of-circuit cases.  *Id.* (citing *Sullivan v. Colvin*, 519 F. App'x 985, 989 (10th Cir. 2013)).  The Court roundly rejects the Commissioner's argument.

For the Commissioner's argument to carry any weight, the Court would have to find that *Smith* implicitly overrules *Haga* and *Frantz*.  To the extent the Commissioner invites the Court to interpret *Smith* as overruling *Haga* and *Frantz*, the Court declines.  *Smith* does not overrule *Haga* and *Frantz*.  One panel of the circuit court cannot overrule another.  *United States v. Brown*, 400 F.3d 1242, 1256 (10th Cir. 2005); *United States v. Foster*, 104 F.3d 1228, 1229 (10th Cir. 1997).  "Absent an intervening Supreme Court or en banc decision justifying such action, [the Tenth

Circuit Court of Appeals] lack[s] the power to overrule [its] own precedent." *Thompson v. Weyerhaeuser Co.*, 582 F.3d 1125, 1130 (10th Cir. 2009) (citing *United States v. Hernandez-Rodriguez*, 352 F.3d 1325, 1333 (10th Cir. 2003)). The portion of *Smith* that the Commissioner refers to as "clear precedent" is contained in a footnote. 821 F.3d at 1269 n.2. It is only a dictum. It does not overrule *Haga* and *Frantz*.[4]

Lastly, the Court has surveyed the cases from our circuit that expressly address the distinction between Section I and Section III. If read in a vacuum, *Smith* and *Sullivan* could be interpreted in the Commissioner's favor, but the others could not. *Compare Smith*, 821 F.3d at 1269 n.2 ("Ms. Smith questions how the [ALJ]'s [RFC] assessment incorporates the moderate limitations indicated by Dr. Frommelt. This is the wrong question. . . . Dr. Frommelt's notations of moderate limitations served only as an aid to her assessment of [RFC]. We compare the [ALJ]'s findings to Dr. Frommelt's opinion on [RFC], not her notations of moderate limitations."), *and Sullivan v. Colvin*, 519 F. App'x 985, 989 (10th Cir. 2013) (acknowledging the POMS' distinction between Section I and Section III, rejecting the plaintiff's argument that the Section I limitations are "in addition to those in Section III," and finding that the ALJ had relied on the Section III findings and was not required to discuss the Section I findings), *with Nelson v. Colvin*, No. 15-6226, 2016 U.S. Dist. LEXIS 12966 (10th Cir. July 12, 2016) (unpublished) (referring to the doctor's Section I findings versus his Section III findings but ultimately deciding that the ALJ's RFC accounted for all of the Section I findings (as opposed to finding that the ALJ was free to disregard the Section I findings entirely)), *Lee v. Colvin*, 631

---

[4] Rather than overruling *Haga* and *Frantz* (by holding that ALJs may ignore a doctor's Section I findings), the Court reads *Smith* as addressing moderate limitations that may be adequately accounted for in an ALJ's RFC limitation to unskilled (or simple) work. *Smith*, 821 F.3d at 1268–69 (holding that the ALJ's RFC assessment adequately accounted for the doctor's assessment of certain moderate functional limitations). In other words, the Court interprets *Smith* as being more about unskilled work, and less about Section I versus Section III findings.

F.3d 538, 541 (10th Cir. 2015) (finding that the POMS' distinction between the purposes of Section I and Section III "does not mean, of course, that the ALJ should turn a blind eye to any moderate limitations enumerated in Section I that are not adequately explained in Section III.") (emphases omitted), *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015) ("Where a psychologist's Section III narrative does not contradict any Section I limitations and describes the effect each Section I limitation would have on the claimant's mental RFC, the ALJ may properly look to only the Section III narrative as the psychologist's opinion regarding mental RFC.  The ALJ did so here . . . .  And we do not see any contradiction between Sections I and III of Dr. Kendall's [report] or any failure to describe in Section III the effects of any Section I limitations on [the plaintiff]'s capacity for work.") (internal citations omitted), *Carver v. Colvin*, 600 F. App'x 616, 618–19 (10th Cir. 2015) (acknowledging the POMS' distinction between Section I and Section III, but holding that ALJ may not "turn a blind eye to moderate Section I limitations," and ultimately finding that the Section I limitations at issue were accounted for in the Section III findings), *and Jaramillo v. Colvin*, 576 F. App'x 870, 874 (10th Cir. 2014) (acknowledging the POMS' distinction between Section I and Section III, analyzing whether the ALJ's RFC (presented to the VE in a hypothetical question) "adequately account[ed]" for the Section I findings, and ultimately finding that the Section I limitations at issue were accounted for in the ALJ's RFC).  While some of these cases suggest that an ALJ may rely exclusively on the Section III findings, they do so with an important caveat:  the Section III findings must adequately account for the Section I findings.

To summarize, the POMS distinguishes between Section I and Section III expressly in order to assist the doctor (who is acting as an adjudicator) in making an ultimate determination of

disability, rather than to dictate (or even suggest) how the ALJ should weigh the doctor's MRFCA form (i.e., his nonexamining opinion) at a later administrative stage. The regulations, the POMS, and the case law explicitly and repeatedly require ALJs to consider *all* of the findings made by nonexamining physicians and do not except the Section I findings. For all of these reasons, the Court cannot agree with the Commissioner that the ALJ in this case was permitted to ignore Dr. Walker's Section I findings merely because they were recorded in Section I.[5]

II.   <u>The ALJ's limitation to "simple" tasks does not account for Dr. Walker's and Dr. Owen's concurring opinions that Plaintiff is moderately limited in her ability to adapt to changes in the workplace.</u>

Although the Court has provided considerable analysis of the distinction between Section I and Section III, the bedrock rule being applied in this case is something broader: ALJs are required to weigh medical source opinions and to provide "appropriate *explanations* for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at *5 (emphasis added); *see Keyes-Zachary,* 695 F.3d at 1161 (same) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). Plaintiff argues that the ALJ in this case failed to provide appropriate explanations for adopting some of Dr. Walker's and Dr. Owen's opinions and rejecting others. The Commissioner argued that the ALJ was not required to explain why she did not adopt Dr. Walker's Section I findings because her duty to explain was satisfied by covering the doctor's Section III findings. The Court has rejected that argument.

---

[5] There is one final reason that the Section I-Section III distinction in the POMS does not permit the ALJ in this case to ignore Dr. Walker's Section I findings. Dr. Walker's report does not actually contain a Section I or Section III. Tr. 69–72. Although Dr. Walker's report is entitled "Mental Residual Functional Capacity Assessment," Tr. 70, the report is not recorded in the format that has been traditionally used, which delineated the sections. Instead, Plaintiff's counsel explains that the traditional form "no longer exists as a stand-alone form[;] it has been incorporated in the administration's Electronic Claims Tool (eCAT)." [Doc. 22] at 5. Based on the experience of reviewing dozens, if not hundreds, of these forms, the Court can infer which portions would constitute the Section I and Section III findings in the traditional form. However, it would be difficult to agree with the Commissioner that in this case, the ALJ was permitted to ignore the Section I findings when they are not identified as such.

However, that is not the end of the story.  The Court must return to the bedrock rule and determine whether the ALJ in this case satisfied her duty to explain her findings as to Dr. Walker's and Dr. Owen's opinions.  In the ALJ's RFC, she assessed that Plaintiff was limited to light work, frequent fingering and handling, and "simple, repetitive tasks, with no public interaction."  Tr. 16.  The Court must determine whether Dr. Walker's and Dr. Owen's limitations are accounted for in this RFC assessment.  If they are not, the Court must determine whether the ALJ adequately explained why she rejected the missing limitations.

a. Dr. Walker's opinion

Dr. Walker opined that Plaintiff was moderately limited in the ability to:

- Remember and carry out detailed instructions;
- Maintain attention and concentration for extended periods;
- Perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
- Sustain an ordinary routine without special supervision;
- Work in coordination with or in proximity to others without being distracted by them;
- Complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
- Interact appropriately with the general public;
- Ask simple questions or request assistance;
- Accept instructions and respond appropriately to criticism from supervisors;
- Get along with coworkers or peers without distracting them or exhibiting behavioral extremes;
- Respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions;
- Travel in unfamiliar places or use public transportation; and
- Set realistic goals or make plans independently of others.

Tr. 70–71.  Plaintiff argues that some of these limitations are not accounted for in the ALJ's RFC assessment.  Plaintiff acknowledges that the ALJ's RFC assessment limited Plaintiff to "simple" (i.e., unskilled) tasks.  Plaintiff argues, however, that many of Dr. Walker's limitations are not encompassed by a limitation to unskilled work.  *Id.* at 16–17 (citing POMS § DI 25020.010(A)(3)[6]).

The Commissioner does not argue that the ALJ's RFC assessment accounts for all of Dr. Walker's limitations.  *See* [Doc. 19] at 6–7.  She does not respond at all to Plaintiff's argument about the scope of the ALJ's limitations to "simple" tasks.  (She hangs her hat on the Section I-versus-Section III argument alone, *see id.*, which the Court has rejected.)

b.  Dr. Owen's opinion

Dr. Owen opined that Plaintiff had moderate difficulty in being able to:

- Understand and remember detailed or complex instructions;
- Carry out instructions;
- Attend and concentrate;
- Persist at tasks;
- Work without supervision;
- Interact with supervisors;

---

[6]

**3. Mental Demands of Unskilled Work**
    a.    The **basic mental demands of** competitive, remunerative, **unskilled work** include the abilities (on a sustained basis) to:
- understand, carry out, and remember simple instructions;
- make judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions.
- respond appropriately to supervision, coworkers and work situations; and
- deal with changes in a routine worksetting.

POMS § DI 25020.010(A)(3).

- Adapt to changes in the workplace;
- Use public transportation.

Tr. 389.

Dr. Owen further opined that Plaintiff had "moderate to marked" difficulties in being able to:

- Interact with the public;
- Interact with co-workers.

*Id.*  Plaintiff argues that the ALJ was required either to incorporate Dr. Owen's findings into the RFC assessment (and into the hypothetical presented to the VE) or explain why not.  [Doc. 15] at 10–11 (citing SSR 96-6p, 96-8p; *Frantz*; *Haga*, *Langley*).

The Commissioner agrees that only some of Dr. Owen's findings are reflected in the ALJ's RFC assessment.  [Doc. 19] at 3.  She correctly points out that the ALJ explained why she rejected Dr. Owen's limitations as to Plaintiff's social functioning.  *Id.* at 3–4 (citing Tr. 15, 20). Plaintiff does not challenge these reasons.

The Commissioner also acknowledges that "the ALJ expressly relied on Dr. Owen's opinions, except on the issue of Plaintiff's mental limitations."  *Id.* at 5.  Although the Court reads all of Dr. Owen's limitations to be "mental limitations," the Commissioner does not suggest that the ALJ gave any reason for rejecting any part of Dr. Owen's opinion (other than the limitations in social functioning).  *See id.*  Nor does she offer any legal authority that would allow the ALJ to pick and choose from Dr. Owen's report without explanation.  *See id.*

Certainly, an ALJ's RFC assessment need not mirror any particular medical opinion. However, the ALJ must provide reasons for rejecting a medical opinion, which are sufficiently specific to provide for meaningful review.  The Court finds that at least one of the moderate limitations found by both doctors is not accounted for in the RFC and the omission is not

21

explained by the ALJ.  (The parties do not individually address each limitation assessed by the doctors, and the Court will not do so either.)

The doctors' concurrence that Plaintiff is moderately limited in her ability to adapt to changes in the workplace is not accounted for in the RFC.  The Court finds that the ALJ did not explain the omission.  The error matters because the unskilled jobs cited by the VE and the ALJ require the ability to deal with changes in a routine work setting on a sustained basis.  *See* POMS § DI 25020.010(A)(3) (describing the mental demands of unskilled work); *see also* SSR 96-9p, 1996 SSR LEXIS 6, at *26, 1996 WL 374185, at *9 (1996) (explaining that a substantial loss of ability to deal with changes in a routine work setting may or may not significantly erode the unskilled occupational base for individuals limited to sedentary work); *Chapo*, 682 F.3d at 1290 n.3 (finding that a limitation to unskilled work accounted for "issues of skills transfer, not impairment of mental functions—which are not skills but, rather, general prerequisites for most work at any skill level"); *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) ("[T]he ALJ accounted for Vigil's moderate concentration, persistence, and pace problems in his RFC assessment by limiting him to unskilled work.  There may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations.  But in this case, we conclude that [the RFC assessment was adequate].").  The ALJ erred when she failed either to incorporate the opinions of Dr. Walker and Dr. Owen into the RFC assessment or to explain why she did not do so.

## Conclusion

The ALJ in this case impermissibly rejected Dr. Walker's and Dr. Owen's opinion that Plaintiff was moderately limited in her ability adapt to changes in a routine work setting.  The

Court rejects the Commissioner's argument that the ALJ was not required to account for the limitation merely because it was found in Section I of Dr. Walker's report (instead of Section III). The POMS, the regulations, and case law all indicate that the ALJ was required to consider Dr. Walker's MRFCA form in its entirety. The Court finds that the ALJ's RFC assessment does not account for the limitation, and because the ALJ failed to explain why she omitted it, the case must be remanded for proper evaluation of the medical opinions of both Dr. Walker and Dr. Owen.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supportive Memorandum [Doc. 15] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Commissioner's final decision is **REVERSED**, and this case is **REMANDED** for further proceedings in accordance with this opinion.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**